UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAGATAY CAKAN,<br><br>         Petitioner,<br><br>  v.<br><br>JOSEPH D. McDONALD, Jr. Sheriff, Plymouth County Correctional Facility, et al,<br><br>         Respondents. | Civil Action No. 1:25-CV-11094-JEK |

**RESPONDENTS' OPPOSITION TO PETITIONER'S**
**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

  Respondent Joseph D. McDonald ("Respondent"), by and through his attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Cagatay Cakan's ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). Doc. No. 1. Respondent responds to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254.[1]

**INTRODUCTION**

  Petitioner is a native and citizen of Türkiye who received lawful permanent resident ("LPR") status in 2001. *Id.*, ¶¶ 4, 9. Since 2001, Petitioner has spent the majority of time outside of the United States, leading U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE") to charge him as abandoning his LPR status for failure to maintain a permanent domicile in the United States as required. *See* Declaration of

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

Assistant Field Office Director Keith Chan, ¶¶ 9, 11, 13, 22 attached as Exhibit A. *See also Katebi v. Ashcroft*, 396 F.3d 463, 466 (1st Cir. 2005) (setting forth criteria to determine if an LPR has abandoned her permanent resident status).

CBP recently deemed Petitioner inadmissible to the United States upon his arrival at Boston Logan International Airport on April 9, 2025. Doc. No. 1 at 1. Because Petitioner is alleged to have abandoned his LPR status, Petitioner was considered an applicant for admission to the United States when he arrived at Boston Logan. 8 U.S.C. § 1101(a)(13)(A)(i). As an applicant for admission, Petitioner was subject to inspection and was required to demonstrate he was admissible to the United States. 8 U.S.C. § 1225(a)(3). Because CBP determined that Petitioner was "not clearly and beyond a doubt entitled to be admitted," CBP did not admit Petitioner to the United States. 8 U.S.C. § 1225(b)(2). Per Section 1225(b)(2), ICE is mandated to detain Petitioner during his removal proceedings where an Immigration Judge ("IJ") will determine if he abandoned his LPR status. *See Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018) (Explaining that detention under Section 1225(b) must continue until removal proceedings end and nothing in the statute "says anything whatsoever about bond hearings."). As such, his claim that his detention violates statute is without merit.

Petitioner's assertion that his detention violates the Fifth Amendment's Due Process Clause also fails as the Supreme Court has made clear that "[d]etention during deportation proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). Petitioner can challenge his inadmissibility determination in Immigration Court and can seek parole from custody at ICE's discretion.[2]

---

[2] As the First Circuit has explained in a case involving ICE's discretionary decisions regarding arrests and detention, "[i]t is not for [courts] to say whether ICE's strategy is sound public policy, or conversely, whether that strategy is antithetic to sound public policy. That

This Court also lacks jurisdiction over Petitioner's claim that he is "not subject to mandatory detention" on account of being a "returning resident" (Doc. No. 1, ¶ 14) as this challenge must be raised in Immigration Court and then to the Board of Immigration Appeals ("BIA"), and the circuit court if necessary. *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020) (Explaining that only claims "which cannot be raised in removal proceedings and eventually brought to the court of appeals on a petition for review" are subject to review by a district court.).

## BACKGROUND

**A. Legal Background for Aliens Seeking Admission to the United States.**

As a general matter, pursuant to 8 U.S.C. § 1101(a)(13)(C), an LPR who leaves the United States and then seeks to reenter the country is "not ... regarded as seeking an admission into the United States." There are six exceptions to this general rule and as relevant here, LPRs are held as seeking admission to the United States if they have "abandoned or relinquished that status". *Id.* § 1101(a)(13)(C)(i). *See De Vega v. Gonzales*, 503 F.3d 45, 48 (1st Cir. 2007) (Finding Section 1101(a)(13)(C) "plain on its face" in its determination that an LPR "who leaves the United States and then returns [] to be 'seeking admission' if that person fits within any of the six categories enumerated in 8 U.S.C. § 1101(a)(13)(C).").

An LPR who, by operation of law, is seeking admission under Section 1101(a)(13)(C) is subject to inspection by a CBP officer and carries the burden of demonstrating his admissibility into the United States. *See* 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1(f). The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also* 8

---

question lies within the domain of the politically accountable branches of the federal … government[]. Our task is simply to decide the pertinent legal issues ….". *Ryan v. U.S. Immigr. & Customs Enf't,* 974 F.3d 9, 18–19 (1st Cir. 2020).

C.F.R. § 1235.1 (setting forth inspection procedures). An alien who is seeking admission is known as "an applicant for admission" or an "arriving alien." 8 U.S.C. § 1225(a)(1); 8 C.F.R. § 1.2 (defining arriving alien as "an applicant for admission coming or attempting to come into the United States at a port-of-entry …").

Under 8 U.S.C. § 1225(b)(2)(A), if CBP deems an applicant for admission inadmissible, such individual must be detained while he contests that determination in Immigration Court. ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding" in Immigration Court.) (emphasis added). The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *Jennings*, 583 U.S. at 302 ("[Section] 1225(b)(2) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)).

An applicant for admission detained under Section 1225(b)(2)(A) therefore is not statutorily entitled to release or to seek a bond hearing while in removal proceedings.[3] The only means to obtain release for an applicant for admission is through parole. CBP and ICE have discretion to parole applicants for admission into the United States. *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5(b). Parole is automatically terminated "upon the departure from the United States of the alien". 8 C.F.R. § 212.5(e).

---

[3] An IJ "may not" conduct a bond hearing to determine whether an applicant for admission should be released into the United States during removal proceedings. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act.").

An LPR deemed inadmissible due to allegedly abandoning LPR status must contest the charge of inadmissibility in Immigration Court. As the First Circuit has explained, "[i]n most circumstances, an LPR is permitted to reenter the United States after traveling abroad, so long as he is 'returning to an unrelinquished lawful permanent residence after a temporary trip abroad.'" *Mahmoud v. Barr*, 981 F.3d 122, 126 (1st Cir. 2020) (quoting *Moin v. Ashcroft*, 335 F.3d 415, 418 (5th Cir. 2003)). If the government contends an LPR has abandoned his permanent resident status, the "government bears the burden of proving by clear, unequivocal, and convincing evidence that he abandoned his status while out of the country and is therefore ineligible for admission into the United States." *Mahmoud*, 981 F.3d at 125. "Factors to be considered in evaluating the alien's intent include the alien's family ties, properly holdings, and business affiliations within the United States, and the aliens' family, property ties in the foreign country." *Katebi*, 396 F.3d at 467.

### B. Petitioner's Immigration History.

Petitioner is a native and citizen of Türkiye who obtained LPR status in 2001. Doc. No. 1, ¶ 9. Over the course of the approximately the next fifteen years, Petitioner rarely visited the United States. Exh. A, ¶ 9. In 2015, Petitioner applied for a nonimmigrant visa while in Turkey and indicated on his visa application that he was a resident of Turkey who had never been to the United States. *Id.*, ¶ 10. Petitioner traveled to the United States with his LPR card several times between 2017 and 2020. *Id.*, ¶ 13. However, when Petitioner sought admission to the United States on December 23, 2020, CBP determined that he had abandoned his LPR status and therefore served him a NTA to appear in Immigration Court.[4] *Id.*, ¶¶ 14-19. CBP,

---

[4] The NTA, however, was not served in Immigration Court for unknown reasons. *Id.*, ¶ 20.

exercised its discretion and paroled Petitioner from custody. *Id.*, ¶ 17. Petitioner traveled to and from the United States several times between 2020 and 2025 but spent the majority of time outside of the United States. *Id.*, ¶ 22. Removal proceedings did not commence until ICE served Petitioner with a superseding NTA and filed it in Immigration Court on November 13, 2024. *Id.*, ¶ 23.

On April 9, 2025, Petitioner sought admission to the United States upon arrival at Boston Logan. *Id.*, ¶ 26. CBP determined that Petitioner was inadmissible and therefore did not admit Petitioner into the United States. *Id.*, ¶ 27. Petitioner has been in ICE custody since April 10, 2025. *Id.* Petitioner filed a Motion to Terminate in Immigration Court contending that he is not inadmissible to the United States as he has not abandoned his LPR status. *Id.*, ¶ 28. Such motion remains pending and his next appearance in Immigration Court is scheduled for May 19, 2025. *Id*.

### C. Procedural History.

Petitioner filed his Petition on April 24, 2025 and asks this Court to order his release on account of a alleged statutory and constitutional violation. Doc. No. 1. He claims that he "is a returning resident and, as such, is not subject to mandatory detention or ineligible for bond." *Id.*, ¶ 14. He asserts that such detention violates 8 U.S.C. § 1226 and the Fifth Amendment's Due Process Clause. *Id.* at 1. As such, he asks this Court to order his release or that he receive a bond hearing in Immigration Court. *Id.*, PRAYER FOR RELIEF.

## ARGUMENT

ICE's detention of Petitioner is mandated by statute and does not offend the Constitution. Additionally, this Court lacks jurisdiction to determine if Petitioner is inadmissible to the United States as this question must be addressed administratively before review by the First Circuit.

### A. Petitioner's Detention is Mandated by Statute.

Upon his arrival to Boston Logan on April 9, CBP considered Petitioner to be seeking admission to the United States pursuant to 8 U.S.C. § 1101(a)(3)(C)(i) because of evidence that Petitioner had "abandoned or relinquished" his LPR status. As such, Petitioner was subject to inspection by CBP pursuant to 8 U.S.C. § 1225(a)(3) which provides that "[a]ll aliens … who are applicants for admission … shall be inspected by immigration officers." Based upon Petitioner's immigration history, CBP determined that Petitioner was "not clearly and beyond a doubt entitled to be admitted" and therefore detained him for purpose of removal proceedings as authorized by 8 U.S.C. § 1225(b)(2)(A).

While Petitioner presented an I-551 document when he applied for admission at Boston Logan, "a reentry permit, in and of itself, does not prevent a finding that an alien has abandoned her permanent residency status. … A reentry permit merely serves as evidence of an alien's intent to return, which the Government may refute by clear, unequivocal, and convincing evidence." *Moin v. Ashcroft*, 335 F.3d 415, 419 (5th Cir. 2003). As explained by another court, "[e]ven if a Green Card holder seeking admission does have a Green Card, a reentry permit, or an SB-1 visa, that is just the beginning. None of these documents is a sure ticket into the United States. A Green Card holder might still be inadmissible—and so subject to removal proceedings—for any number of reasons." *Doe v. Pompeo*, 451 F. Supp. 3d 100, 106 (D.D.C. 2020). As such, Petitioner's claim that his possession of a I-551 document entitled him to admission to the United States is incorrect. Further, any prior parole into the United States

automatically terminated "upon the departure from the United States of the alien". 8 C.F.R. § 212.5(e).[5]

Petitioner is mistaken that his detention is contrary to 8 U.S.C. § 1226(a) as that statute does not govern his detention. Instead, Section 1225(b)(2)(A) authorizes Petitioner's detention and his detention without a bond hearing is lawful pursuant to the plain language of the statute and Supreme Court precedent. As explained by the Supreme Court in *Jennings*, Section 1225 "mandate[s] detention of applicants for admission until [removal] proceedings have concluded." 538 U.S. at 297. In declining to find a statutory requirement to conduct bond hearings for such applicants for admission, the Supreme Court explained that "nothing in the statutory text imposes any limit on the length of detention … and neither [statutory provision] says anything whatsoever about bond hearings." *Id.*

### B.  Petitioner's Brief Detention does not Violate the Constitution.

Petitioner's brief detention does not violate the Constitution's Fifth Amendment's Due Process Clause. The Supreme Court has consistently recognized that applicants for admission to the United States have limited due process rights and the Court has also upheld the constitutionality of detention during removal proceedings, even in the absence of access to a bond hearing.

#### 1.  **Applicants for Admission to the United States have Limited Due Process Rights**.

The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Pursuant to

---

[5] Petitioner's reference to the administration's termination of a parole program for citizens of certain countries is also incorrect as Petitioner is not a citizen of any of those countries.

that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Supreme Court has held that applicants for admission lack any constitutional due process rights with respect to admission: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("*Mezei*"), and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). As recently explained by the Supreme Court, courts recognize a "century-old rule regarding the due process rights of an alien seeking initial entry" where an applicant for admission—like Petitioner— "has only those rights regarding admission that Congress has provided by statute" and "Due Process provides nothing more". *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020).

As such, applicants for admission may be detained without a bond hearing pending admission or removal without running afoul of the Constitution because statute does not provide for bond hearings and only allows for release through the agency's exercise of parole. In *Mezei*, for example, the Supreme Court held that a returning lawful permanent resident's detention at the border without a hearing to effectuate his exclusion from the United States did not violate

due process. *Mezei*, 345 U.S. at 206. Specifically, Mr. Mezei arrived at Ellis Island seeking admission into the United States. *See id.* The Supreme Court held that Mr. Mezei's detention did not "deprive[ ] him of any statutory or constitutional right." *Id.* at 215. Instead, the Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control." *Id.* at 210. The Court recognized that "once passed through our gates, even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. But "an alien on the threshold of initial entry stands on a different footing" than an alien who has effected an entry into the United States. *Id.*

The Supreme Court's decision in *Thuraissigiam* reinforces *Mezei*'s holding. In relevant part, *Thuraissigiam* concerned a due process challenge raised by an alien apprehended 25 yards from the border, which he crossed illegally. 591 U.S. at 139. In its decision, the Supreme Court delineated the boundaries of due process claims that can be made by applicants for admission. Specifically, the Court held that for such aliens stopped at the border, even if paroled thereafter, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Id.* at 131 (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). In reaching this conclusion, *Thuraissigiam* cited *Mezei* authoritatively, *see* 591 U.S. at 139, because of the basic distinction between aliens already "present" in the United States and those who stand at the "threshold of entry," *Mezei*, 345 U.S. at 208, 214.

While *Thuraissigiam* did not involve an LPR applicant for admission, the Supreme Court has provided some guidance regarding the due process rights of continuously present residents who face removal from the United States, although not in the specific situation as set forth in this

10

matter. These cases, however, do not support Petitioner's claim that he is entitled to release or a bond hearing on account of his brief detention upon seeking admission to the United States.

For example, in *Plasencia,* the Supreme Court considered, but did not ultimately decide, whether a long-term resident who left the country for a brief period and was placed in exclusion proceedings upon return received adequate due process at her exclusion hearing. 459 U.S. at 32. The Court explained that its past cases have "suggested that a continuously present resident alien is entitled to a fair hearing when threatened with deportation" and that "a continuously present permanent resident alien has a right to due process in such a situation." *Id.* The *Plasencia* Court also recognized its decision in *Kwong Hai Chew v. Colding*, 344 U.S 590, 596 (1954) which stood for the proposition that "a resident alien returning from a brief trip has a right to due process just as would a continuously present resident alien." *Id.* at 31. The Court described the amount of process due in such situation as "a hearing on the charges underlying any attempt to exclude him." *Id.* at 33.

The Supreme Court acknowledged the judiciary's limited role was to determine "whether the procedures meet the essential standards of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." *Id.* at 35. In *Plasencia*, the Court recognized that "Congress did not intend to require the use of deportation procedures in cases such as this one" and therefore "it would be improper simply to impose deportation procedures here because the reviewing court may find them preferable." *Id.* Instead, the judiciary's role was to "determine what procedures would satisfy the minimum requirements of due process on the re-entry of a permanent resident alien." *Id.* The Supreme Court, ultimately, however, did "not decide the contours of the process that is due or whether the process accorded Plasencia was insufficient." *Id.* at 32.

Petitioner, even though he is charged as an arriving alien, is still nonetheless entitled to challenge his inadmissibility determination and seek relief from removal in Immigration Court, before the BIA, and the circuit court if necessary. As such, Petitioner's due process rights are protected as he will receive the "fair hearing when threatened with deportation" that the *Plasencia* Court considered required for a "continuously present resident alien". *Id.* The Fourth Circuit, in *Othi v. Holder,* 734 F.3d 259, 269–70 (4th Cir. 2013) similarly found no process violation for a LPR deemed inadmissible by CBP by explaining that he was "owed three considerations before being deemed inadmissible: (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." Petitioner will also receive these three considerations as provided by statute and therefore his due process challenge where he seeks release or a bond hearing fails. *See also Doe*, 451 F. Supp. 3d at 119 (Concluding that with the initiation of removal proceedings against a returning LPR, the "Government *was* providing a process before denying them admission: a hearing to determine whether they had 'abandoned' their permanent resident status …").

Petitioner can also ask ICE to exercise its discretion and parole him from its custody while his removal proceedings occur.[6] Petitioner does not explain whether he has sought parole from ICE prior to filing his habeas petition, but such possible avenue for release provides another means of due process and should be exhausted prior to making a claim that his due process rights were violated. *See Traore v. Decker*, No. 19-CV-4612 (ALC), 2019 WL 3890227, at *4

---

[6] This Court lacks jurisdiction over ICE's decision to exercise parole. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) which states that "no court shall have jurisdiction to review …. any other decision or action of the … Secretary of Homeland Security the authority for which is specified under this title to be in the discretion of … the Secretary." Parole is a discretionary decision made under 8 U.S.C. § 1182(d)(5)(A) and district courts are barred from "judicial review of individual parole decisions." *Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2023 WL 3466327, * 8 (D. Mass. May 12, 2023).

(S.D.N.Y. Aug. 19, 2019) (Explaining that "by failing to file an application for or even request[ing] parole, Petitioner has failed to exhaust his administrative remedies."); *Alexandre v. Decker*, No. 17CIV5706GBDKHP, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) (concluding that "the parole procedure, as currently enforced, satisfies due process for arriving aliens because (1) they are differently situated than individuals within our borders, and (2) the period of detention during such a proceeding is not indefinite—it will end upon the conclusion of the removal proceeding.")

In seeking release to remedy an alleged due process violation, Petitioner ignores *Mezei*'s holding, reaffirmed in *Thuraissigiam*, that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." 345 U.S. at 212. Here, 8 U.S.C. § 1225(b)(2)(A) makes plain that applicants for admission "shall be detained for a proceeding" in Immigration Court. As such, Petitioner is not entitled to release because "an alien in [Petitioner's] position has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140.

The First Circuit held that detention of an alien seeking admission to the United States does not violate due process in *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). In that case, the Court explained that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these

cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.*

While this Court has not considered a case of similar nature, other district courts have routinely declined to find due process violations for habeas petitioners detained pursuant to Section 1225(b), even when the petitioner was an LPR. *See e.g.*, *Perez v. Aviles*, 188 F. Supp. 3d 328, 332–33 (S.D.N.Y. 2016) (Detention under Section 1225(b) did not violate due process because detention, even though lengthy, "has not been arbitrary or unreasonable."); *Bataineh v. Lundgren*, No. 20-3132-JWL, 2020 WL 3572597, at *8 (D. Kan. July 1, 2020) (Finding that "the applicable statutory process shapes an arriving alien's procedural due-process rights and therefore they have no statutory right to release or a bond hearing."); *Ramos Funes v. Searls*, No. 19-CV-6332 CJS, 2020 WL 1956346, at *14–15 (W.D.N.Y. Apr. 23, 2020) (no substantive or procedural due process violation for arriving alien detained for lengthy removal proceedings).

Because statute does not allow for his release from detention or for a bond hearing to occur, Petitioner is not entitled to such relief under the Constitution currently either. As such, Petitioner's Fifth Amendment claim fails.

2. **Detention During the Course of Removal Proceedings is Constitutional**.

Petitioner's due process challenge to his brief detention is also without merit as the Supreme Court has held that detention during removal proceedings, even without access to a bond hearing, is constitutional. In *Demore v. Kim*, 538 U.S. 510, 522 (2003) the Supreme Court upheld the constitutionality of a statutory provision that requires mandatory detention during removal proceedings without access to bond hearings, even for LPRs. The Court "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523. The Court therefore re-affirmed its "longstanding view that the

14

Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings". *Id.* at 526.

The Court explained that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* The Court recognized as to due process concerns that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522 (citations omitted). The *Demore* Court distinguished its case from *Zadvydas v. Davis*, 533 U.S. 678 (2001) where the Court confronted a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. *Id.* at 527. The Court explained that unlike potentially indefinite detention at issue in *Zadvydas*, detention during removal proceedings has "a definite termination point" and therefore did not implicate due process concerns. *Id.* at 529.

Here, there is no dispute that Petitioner is detained for the limited purpose of removal proceedings where he can challenge his inadmissibility determination. His detention is not punitive or for other reasons than to address his inadmissibly to the United States. His detention is also not indefinite, it will end upon the conclusion of his proceedings. As this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount to an unconstitutional duration.").

    **3. Even Assuming Further Review of Petitioner's Detention is Warranted, no Bond Hearing is Warranted.**

Respondent acknowledges that some district courts have determined that further analysis is warranted to determine if an applicant for admission is entitled to a bond hearing under the

Constitution once Section 1225's mandatory detention becomes "unreasonably prolonged." *See e.g.*, *Pierre v. Doll*, 350 F. Supp. 3d 327, 331 (M.D. Pa. 2018) (Holding that arriving aliens "have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable."); *Brissett v. Decker*, 324 F. Supp. 3d 444, 452 (S.D.N.Y. 2018) (Habeas petition "entitled to an individualized determination as to his risk of flight and dangerousness once his continued detention has become unreasonable and unjustified."). Here, because Petitioner was only recently detained, no claim of unreasonably prolonged detention can be raised and therefore no further analysis as to whether a bond hearing is warranted.

### C. This Court Lacks Jurisdiction to Decide Petitioner's Challenge to the Applicability of 8 U.S.C. § 1225(b)(2).

Petitioner claims that he is a "returning resident" and not properly charged as an arriving alien is therefore not subject to mandatory detention. Doc. No. 1, ¶ 14. Petitioner admits that he is challenging his alleged inadmissibility in Immigration Court, but nonetheless also asks this Court to determine whether he is properly charged as an applicant for admission and thus subject to mandatory detention. *Id.* at 1, ¶ 14-15. This Court, however, lacks jurisdiction to consider Petitioner's claim as to the applicability of Section 1225(b)(2) as this challenge must be raised administratively before being ultimately decided by the First Circuit. As explained below, two provisions of the INA channel legal and factual questions arising from an alien's removal through the administrative process before eventual review before the circuit courts. District courts, however, play no role in such process.

"The jurisdiction-channeling provision of the [INA] states that 'the *sole and exclusive* means for judicial review of an order of removal' is 'a petition for review [PFR] filed with an appropriate court of appeals.'" *Gicharu*, 983 F.3d at 16 (quoting 8 U.S.C. § 1252(a)(5),

emphasis added). Another provision—codified at § 1252(b)(9) and commonly referred to as the jurisdictional bar—"strips federal courts of jurisdiction to decide legal and factual questions *arising from* an alien's removal in any other context, including on a petition for a writ of habeas corpus." *Id.* (emphasis added); 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section").

Thus, an individual seeking to challenge either his removal order or any issue "arising from any action taken or proceeding brought to remove [him]" must do so through a PFR filed with a circuit court of appeals. *See Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007). An individual cannot sidestep or duplicate that review process by also filing a habeas petition in district court raising issues that could be litigated in the removal proceeding as "Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings." *Id.*

In determining whether a claim "aris[es] from" an alien's removal—and thus falls within the scope of the jurisdictional bar—courts in this circuit ask whether the claim is "independent of, or wholly collateral to, the removal process." *Id.* at 11. If it is, then the jurisdictional bar does not apply. For instance, "claims which cannot be raised in removal proceedings and eventually brought to the court of appeals on a petition for review are 'independent of, or wholly collateral to, the removal process.'" *Gicharu*, 983 F.3d at 16 (quoting *Aguilar*, 510 F.3d at 11).

Petitioner's claim that Section 1225(b)(2) does not apply to him is a claim that can be raised in removal proceeding and therefore this Court lacks jurisdiction to review Petitioner's contention that he "is a returning resident and, as such, is not subject to mandatory detention or ineligible for bond." Doc. No. 1, ¶ 14.

17

This Court has routinely concluded it lacks jurisdiction to consider whether an alien is subject to mandatory detention when such determination is subject to review in Immigration Court.  For example, in *Flores-Powell v. Chadbourne*, 677 F.Supp.2d 455, 468 (D. Mass. 2010), the Court found that it "lacks jurisdiction to review the Immigration Court's determination that [an alien's] conviction requires mandatory detention … because the decisive factor is the Immigration Court's determination of deportability, which district courts may not review."  In that case, the petitioner claimed that a criminal conviction did not trigger the applicability of 8 U.S.C. § 1226(c) which mandates detention, but the Court found itself without jurisdiction to consider this claim because "the question of the applicability of the mandatory detention statute … is not independent of removal."  *Id.* at 467.  Instead, whether the mandatory detention statute applied "is conditioned on a determination of deportability" under the INA.  *Id.*  The Court lacked jurisdiction over this determination because "the administrative process includes a mechanism for administrative review of decisions regarding deportability …". *Id.* at 469.

Other sessions of this Court have reached similar conclusions concerning the lack of jurisdiction to consider the applicability of mandatory detention statutes.  *See Zaoui v. Horgan*, No. 13-11254-DPW, 2013 WL 5615913, at *1 (D. Mass. Aug. 23, 2013) (Explaining that petitioner's "mandatory detention and removability both depend on [him] being convicted of an aggravated felony" … and the claim that detention is improper because the conviction is not final "is equally a challenge to—and by no means independent of—his removability.").

More recently, Chief Judge Saylor also found the court lacked jurisdiction over a similar claim that a mandatory detention statute did not apply.  *Alphonse v. Moniz*, No. 21-CV-11844-FDS, 2022 WL 279638, at *4 (D. Mass. Jan. 31, 2022).  The Court explained that where "the questions of law and fact are the same for the questions of removability and mandatory

detention, an alternative interpretation of § 1252(b)(9) is not possible." *Id.* The Court further held that the application of Section 1252(b)(9) to strip a district court of jurisdiction to consider the applicability of the mandatory detention statute did not violate the Suspension Clause since the challenge to removability could be raised administratively and ultimately to the First Circuit. *Id.* at *7

Here, the question of whether Petitioner is subject to mandatory detention as an applicant for admission is fully intertwined with the question of whether he is inadmissible and removable from the United States. His claim before this Court that he is "a returning resident" and not subject to mandatory detention is "part and parcel of the removal proceeding itself." *Aguilar*, 510 F.3d at 13. Indeed, this is the same argument that he is making through a motion to terminate currently pending before the IJ. *Id.*, ¶ 28. Thus, this Court determining whether Petitioner is subject to detention under Section 1225(b)(2) necessarily overlaps with deciding whether his immigration history subjects him to removal for abandoning his LPR status. Because these claims can be—and are currently being—raised administratively, Section 1252(b)(9) deprives this Court of jurisdiction to decide whether Petitioner "falls within the mandatory detention statute." *Flores-Powell,* 677 F. Supp. at 466.

As another session of this Court has explained: "By law, the power to establish immigration controls, and to establish a process for resolving immigration disputes, rests with Congress, subject only to the restraints of the Constitution." *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *2 (D. Mass. Oct. 1, 2018). Stated further by Chief Judge Saylor, "Congress has created a statutory procedure that does not include a role for the district courts; indeed, it has expressly stripped district courts of jurisdiction to hear such disputes. Such issues are remitted by law to the immigration authorities, subject to review by the Courts of Appeals."

*Id.* This Court cannot "ignore or defy the law, even in highly sympathetic circumstances. To do so would be a fundamental violation of its most basic responsibilities." *Id.*

As such, the Court lacks jurisdiction over Petitioner's claim that he is not subject to detention under Section 1225(b)(2).

## CONCLUSION

For these reasons, Petitioner's detention is authorized by statute and does not violate the Constitution. This Court also lacks jurisdiction to consider Petitioner's challenge to the applicability of Section 1225(b)(2). As such, this Court should deny the request to issue a writ of habeas corpus.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: May 1, 2025    By:    */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: May 1, 2025    By:    */s/ Mark Sauter*
Mark Sauter